United States Courts
Southern District of Texas
FILED

*April 30, 2025*

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § § § § v. § § § § VILMA ALMAZAN, § § Defendant. § | No. **4:25-cr-203** |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### General Allegations

1. Defendant **VILMA ALMAZAN** ("**ALMAZAN**") helped to set up and operate a labor-staffing company, Rockwell Staffing, LLC ("Rockwell") in the name of a nominee owner, and later concealed its revenue by having clients send payments to a different company's bank account. When **ALMAZAN** found out that an IRS revenue officer was attempting to collect employment taxes that Rockwell owed, **ALMAZAN** called the revenue officer and lied to the officer about **ALMAZAN**'s involvement with Rockwell.

2. In or around November 2020, **ALMAZAN** used an on-line legal-services company to file papers necessary to form Rockwell as a Texas limited liability company. In submitting the LLC application, **ALMAZAN** listed Rockwell's sole member as S.L., and she listed S.L.'s address as one on Wilshire Place Dr. in Houston. That address, in fact, was not S.L.'s. It was **ALMAZAN**'s. At the time, S.L. was 18 years old and was living with her mother. S.L. is

the daughter of Joseth Limon. **ALMAZAN** had worked at labor-staffing companies owned by Joseth Limon since 2013. S.L. had no experience in the labor-staffing business.

3. On or about January 22, 2021, **ALMAZAN**, together with Joseth Limon and another person, accompanied S.L. into a Houston branch of a JP Morgan Chase bank to assist S.L. in opening two bank accounts for Rockwell.

4. Rockwell began operations in or around March 2021.

5. As a labor-staffing business, Rockwell, for a fee, would furnish laborers to clients, pay the laborers, obtain workers compensation coverage for them, and take responsibility for filing and paying all the associated employment taxes. The fee that Rockwell charged was expressed as a percentage of the wage rate that the client had agreed to pay the laborers. This percentage was called the margin. Thus, if the agreed-upon wage rate was $10/ hour and the margin was 40%, Rockwell would charge the client $14/hour and then pay the laborers at $10/hour pay rate. Rockwell would withhold taxes from that $10, so the laborer's net pay would be less than $10/hour.

6. Beginning on or about March 2021, and through at least December 2023, **ALMAZAN** communicated with Rockwell's clients and managed Rockwell's books and bank account. **ALMAZAN** would prepare invoices, transmit the invoices, cause Rockwell's employees (the laborers) to be paid—either by ACH transfer, check, or cash—and would deal with questions from clients. During that period, **ALMAZAN** used QuickBooks to keep Rockwell's records, and she accessed Rockwell's bank account to make payments and transfers.

7. On or around July 2022, **ALMAZAN** signed a labor-staffing contract on Rockwell's behalf. The contract called for Rockwell to supply laborers to a manufacturing

2

company in Hempstead, Texas ("Company A"). Shortly after signing that contract, **ALMAZAN** instructed Company A to remit payments to Platinum Employment Group ("Platinum.")

8. Platinum was a labor-staffing company that was owned by Joseth Limon. **ALMAZAN** had worked at Platinum from 2013 to 2019.

9. From July 2022 through at least December 2024, Company A made payments on Rockwell invoices by issuing checks payable to Platinum. During that time, **ALMAZAN** had access to Platinum's bank account, and **ALMAZAN** transferred funds from it to herself and to Joseth Limon. At no time did **ALMAZAN** or anyone else transfer into Rockwell's bank accounts the funds that Company A had paid to Platinum.

10. On or around March 2023, the IRS assigned a revenue officer to collect employment-tax liabilities of Rockwell for the third and fourth quarters of 2022 (the "Collection Proceeding"). As part of the Collection Proceeding, the revenue officer, on or around May 3, 2023, delivered to S.L.'s residence letters informing S.L. of Rockwell's unpaid tax balance and that the Collection Proceeding had commenced. On around May 4, 2023, S.L. called the revenue officer, and during the call the revenue officer requested information about Rockwell's assets, Rockwell's operations, and persons associated with Rockwell who might be personally liable for Rockwell's employment taxes.

11. In or around May 2023, **ALMAZAN** learned from Joseth Limon that an IRS revenue officer had been attempting to collect employment taxes owed by Rockwell. Joseth Limon told **ALMAZAN** that S.L. had called him, in a panicked state, because an IRS revenue officer had come to S.L.'s home.

12. Through text messages and phone calls, **ALMAZAN** told S.L. not to worry and that she (**ALMAZAN**) and Joseth Limon would take care of Rockwell's problems with the IRS.

13. Until May 2023, **ALMAZAN** had never informed S.L. of Rockwell's operations and S.L. had never had any significant involvement in or knowledge of Rockwell's operations or finances, save for the fact that Rockwell had bank accounts.

14. On June 27, 2023, **ALMAZAN** called the IRS revenue officer at the number that S.L. had provided to her.

15. On that call, **ALMAZAN** told the revenue officer that **ALMAZAN** (a) did not process any payroll and (b) had only helped S.L. with Rockwell matters, such as by helping her with logging in to bank-account and accounting software. Both of these statements were false, and **ALMAZAN** knew that they were false when she said them.

16. On the call, **ALMAZAN** also told the revenue officer that **ALMAZAN**'s involvement with Rockwell had stopped at the end of 2022. This was also false, and **ALMAZAN** knew that it was false at the time she said it.

17. As part of the Collection Proceeding, on or around June 27, 2023, the revenue officer caused the IRS to levy on S.L.'s and Rockwell's bank accounts. That levy did not collect the full amount of Rockwell's tax liability. At the time of that levy, the revenue officer was not aware that Company A was a Rockwell client or that Company A, at **ALMAZAN**'s instruction, had been paying Rockwell's invoices by issuing checks to a different company (Platinum).

18. All of the above acts took place in the Houston Division of the Southern District of Texas.

## COUNT 1: CORRUPT ENDEAVOR TO OBSTRUCT AND IMPEDE THE ADMINISTRATION OF INTERNAL REVENUE LAWS
### (26 U.S.C. § 7212(a))

19. Paragraphs numbers one through 18 above are incorporated as though fully set out herein.

20. In or around June 2023, in the Southern District of Texas, and elsewhere, **ALMAZAN**, knowing of and reasonably foreseeing the Collection Proceeding described in Paragraph number ten, did corruptly instruct and impede, and corruptly endeavor to obstruct and impede, the due administration of the internal revenue laws, that is the Collection Proceeding, by committing and causing to be committed various acts, each having a nexus to the Collection Proceeding, including by not limited to the following: lying to the revenue officer about the timing and scope of Defendant's involvement with Rockwell.

In violation of Title 26, United States Code, Section 7212(a).

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY


By: *Shirin Hakimzadeh*
Shirin Hakimzadeh
Assistant United States Attorney
Southern District of Texas

and

By: *Curtis J. Weidler*
Curtis J. Weidler
Trial Attorney
United States Department of Justice, Tax Division